1  Neel Chatterjee (SBN 173985)
   *nchatterjee@goodwinlaw.com*
2  Andrew Ong (SBN 267889)
   *aong@goodwinlaw.com*
3  Ian Chen (SBN 287778)
   *ianchen@goodwinlaw.com*
4  **GOODWIN PROCTER LLP**
   601 Marshall Street
5  Redwood City, CA 94063
   Tel: +1 650 752 3100
6  Fax: +1 650 853 1038

7  Hong-An Vu (SBN 266268)
   *hvu@goodwinlaw.com*
8  **GOODWIN PROCTER LLP**
   601 S. Figueroa Street, 41st Floor
9  Los Angeles, CA 90017
   Tel: +1 213 426 2500
10 Fax: +1 213 623 1673

11 Hayes Hyde (SBN 308031)
   *hhyde@goodwinlaw.com*
12 **GOODWIN PROCTER LLP**
   Three Embarcadero Center
13 San Francisco, CA 94111
   Tel: +1 415 733 6000
14 Fax: +1 415 677 9041

Vasudha Talla (SBN 316219)
*vtalla@aclunc.org*
Julia Harumi Mass (SBN 189649)
*jmass@aclunc.org*
**AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA**
39 Drumm Street
San Francisco, CA 94111
Tel: +1 415 621 2493
Fax: +1 415 255 8437

Andrea Scripa Els (*pro hac vice* forthcoming)
*aels@goodwinlaw.com*
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Tel: +1 617 570 1000
Fax: +1 617 523 1231

15 *Attorneys for Plaintiff*

16                **UNITED STATES DISTRICT COURT**

17              **NORTHERN DISTRICT OF CALIFORNIA**

18

19 | AMERICAN CIVIL LIBERTIES UNION OF | Case No.   3:18-cv-04105 |
   | NORTHERN CALIFORNIA, | |
20 | | **COMPLAINT FOR DECLARATORY AND** |
   | Plaintiff, | **INJUNCTIVE RELIEF UNDER THE** |
21 | | **FREEDOM OF INFORMATION ACT,** |
   | v. | **5 U.S.C. § 552 *et seq.*** |
22 | | |
   | U.S. DEPARTMENT OF HOMELAND | |
23 | SECURITY, IMMIGRATION AND | |
   | CUSTOMS ENFORCEMENT, | |
24 | | |
   | Defendant. | |
25

26

27

28

___

FOIA COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**INTRODUCTION**

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, to obtain information about the treatment of immigration detainees by the U.S. Department of Homeland Security, Immigration and Customs Enforcement ("ICE").

2.      ICE's activities, particularly with respect to its treatment of immigrant detainees, is of great public interest and concern.  In California, ICE regularly subjects detained immigrants to burdensome and lengthy voyages fully shackled, with limited access to food, water, and toilets. Plaintiff is aware of several particularly egregious instances, including one in which detained immigrant women were subjected to a 24-hour journey that included traveling in a dark, windowless van in suffocating heat for several hours, causing some of them to vomit or faint.  The women's cries for help went unanswered, and several women thought they would die.

3.      In many regions throughout the country, ICE subcontracts with G4S Secure Solutions, Inc. ("G4S") for the transportation of immigration detainees.  G4S is a highly-controversial private contractor that has been criticized internationally for its treatment of detainees in detention centers and during the provision of transportation services.  G4S receives hundreds of complaints annually from immigration detainees, including complaints alleging acts of assault and racism by its employees.[1]

4.      People have died or been seriously injured as a result of G4S's careless treatment during transport.  For example, in Australia, a coroner deemed the death of a detained immigrant that resulted from extreme temperatures in the back of a G4S van to be "wholly unnecessary and avoidable."[2]  In another instance in 2014, just days before a transportee was beaten to death by

---

[1] *See* Stephen Matthews, *Scandal-hit security firm G4S receives 'unprecedented levels' of complaints after taking over a private ambulance service*, Daily Mail (Oct. 23, 2017, 12:13PM), http://www.dailymail.co.uk/health/article-5008247/Security-firm-G4S-unprecedented-levels-complaints.html (noting that detention centers run by G4S received more than 700 complaints in 2010 and that nine staff members at an immigration detention center were suspended in 2017 after claims of abuse and assault); Lizzie Dearden, *G4S Suspends Nine Staff for Alleged Abuse of Migrants at Brook House Immigration Removal Centre*, The Independent (Sept. 1, 2017, 9:30AM), https://www.independent.co.uk/news/business/news/g4s-migrants-absue-staff-suspended-immigration-removal-centre-private-security-company-a7923731.html.

[2] Melissa Fyfe, *Uproar Over New Prison Contract*, The Sydney Morning Herald (Oct. 4, 2009), http://bit.ly/2u6nQ5I; Exhibit 3, *infra*, at 6.

FOIA COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    another transportee during a transport conducted by G4S, sheriff's deputies in Pinellas County,

2    Florida, publicly stated that they had informed G4S supervisors that their workers needed more

3    training, as G4S's employees were unfamiliar with the Pinellas County roads, had trouble with

4    their vans, and had "awful" handcuffing techniques.[3]  The number and circumstances of deaths

5    linked to conduct by G4S employees in England have also come under scrutiny, including the

6    death of an immigrant in the custody of G4S employees on an airplane.[4]

7           5.      In the United States, G4S holds a contract with ICE and another $234 million

8    contract with U.S. Customs and Border Protection for the transportation of immigrants.[5]  Little is

9    known about the contracting process through which ICE retains G4S.  Serious questions exist as to

10   G4S's fitness to be a detainee transportation provider for ICE.  For example, in addition to the

11   incidents described above, G4S employed the man responsible for murdering 49 people in the

12   2016 Orlando Pulse nightclub shooting—and continued his employment even while he was under

13   FBI investigation as a terrorist suspect.[6]  Further, reports from individuals in ICE custody that

14   have been mistreated or hurt while being transported compel further inquiry into the instruction,

15   oversight, and control ICE exercises over G4S in its provision of transportation services.

16          6.      The federal government's concerted and ongoing efforts to detain individuals, to

17   transport them to detention centers throughout the country, and to increase the use of private

---

[3] *See infra* Exhibit 3, at 6.

[4] *See infra* Exhibit 3, at 6.

[5] *See* U.S. Immigration and Customs Enforcement, Detention Officer (Transportation) Services, Solicitation Number: HSCEDM-12-A-00002, Federal Business Opportunities (July 27, 2017), https://www.fbo.gov/index?s=opportunity&mode=form&id=7034138718ed7b79cb95ad2fb12ce309&tab=core&_cview=0; U.S. Customs & Border Protection, Southwest Border Transportation, Medical Escort and Guard Services, Solicitation Number: HSBP1012R0020, Federal Business Opportunities (Aug. 23, 2013), https://www.fbo.gov/index?s=opportunity&mode=form&id=91edd01479626bfcaf64a03d99649c3a&tab=core&_cview=1.

[6] Alex Emmons, *Orlando Shooter Wasn't the First Murderer Employed by Global Mercenary Firm*, The Intercept (June 14, 2016, 1:44 PM), https://theintercept.com/2016/06/14/orlando-shooter-wasnt-the-first-murderer-employed-by-global-mercenary-firm/.  G4S also admitted that the doctor listed as performing his psychological examination had not conducted an exam or even met the man.  Rob Galbraith & Gin Armstrong, *Buffalo Police Commissioner Hired by Security Firm with a Checkered History and a City Hall Contract*, LittleSis.org (Jan. 25, 2018), https://news.littlesis.org/2018/01/25/buffalo-police-commissioner-hired-by-security-firm-with-a-checkered-history-and-a-city-hall-contract/.

FOIA COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   contractors create an urgent need to obtain information and records about existing relationships

2   with those contractors, the policies and procedures they are subject to, and the detention and

3   transport practices of ICE and its private contractors.

4           7.      On December 18, 2017, Plaintiff American Civil Liberties Union of Northern

5   California ("ACLU-NC"), a non-profit civil rights organization, submitted a FOIA request to ICE

6   seeking its contracts with G4S and any other contractors providing transportation services for

7   immigration detainees in the San Francisco region (the "First FOIA Request").  On April 6, 2018,

8   ACLU-NC and East Bay Express ("EBE"), a local independent newspaper, submitted a FOIA

9   request to ICE seeking records about policies, procedures, and guidelines for detaining and

10  transporting immigration detainees in the state of California; recent complaints about the

11  transportation of immigration detainees; records related to the retention of private transportation

12  providers; and records related to the vehicles, officers, and other individuals involved in the

13  transportation process (the "Second FOIA Request").

14          8.      ICE has not produced a single document in response to either the First FOIA

15  Request or the Second FOIA Request (collectively, the "FOIA Requests").

16          9.      ACLU-NC now brings this action to require production of the information

17  requested.  ICE cannot simply ignore legitimate FOIA requests.

18                                          **PARTIES**

19          10.     Plaintiff American Civil Liberties Union of Northern California is an affiliate of the

20  American Civil Liberties Union, a national, non-profit, non-partisan organization with the mission

21  of protecting civil liberties from government incursions, safeguarding basic constitutional rights,

22  and advocating for open government.  ACLU-NC is established under the laws of the State of

23  California and is headquartered in San Francisco, California.  ACLU-NC has over 169,000

24  members.  In support of its mission, ACLU-NC uses its communications department to

25  disseminate information relating to its mission to the public, through its website, newsletters, in-

26  depth reports, and other publications.

27          11.     ICE is an agency within the meaning of 5 U.S.C. § 552(f)(1).  ICE has its

28  headquarters in Washington, D.C., and field offices all over the country, including in San

3

FOIA COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   Francisco, California.

2   **JURISDICTION**

3        12.     This Court has subject matter jurisdiction and personal jurisdiction over the parties

4   pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i).  This Court also has subject matter

5   jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1346.

6   **VENUE AND INTRADISTRICT ASSIGNMENT**

7        13.     Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C.

8   §§ 1391(e) and 1402.  Plaintiff has its principal place of business in this district.

9        14.     Pursuant to Local Rule 3-2(c) and (d), assignment to the San Francisco division is

10   proper.  Plaintiff ACLU-NC, which is a requestor for each of the FOIA requests at issue in this

11   case, is headquartered in San Francisco.  ICE also has a field office located in San Francisco.

12   **FACTUAL ALLEGATIONS**

13   **The Detention and Transportation of Immigration Detainees and the Use of Private Security Contractors Are Matters of Significant Public Interest**

14

15        15.     The detention and transportation of immigration detainees has been a longstanding

16   issue of public interest.  Media reports frequently scrutinize the government's handling of

17   detainees, often finding it deficient in its treatment of those in its care.  Exposure to hazardous

18   conditions, deprivation of proper medical care, and abusive treatment are widely reported[7] and

19   raise troubling questions about the operation and oversight of immigrant detention and

20   transportation.  These issues continue to plague our nation and affect public confidence in

21   government operations.  The federal government's ongoing plans to expand immigration

22   detention[8] has accelerated the already-urgent need to better understand issues of immigration

23   detention and ensure those who administer detention meet appropriate detention standards.

24        16.     ACLU-NC has received reports demonstrating that the government has not

25   managed to meet appropriate standards in its administration of detention programs.  For example,

26   in a series of interviews over the past year, a group of women related a particularly brutal transport

27   [7] *See infra* Exhibit 3, at 5.

28   [8] *See infra* Exhibit 3, at 5–6.

4

FOIA COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

that they survived in the summer of 2017.  While being transported from one detention facility to

another in Northern California, these women were subjected to an unnecessarily long journey in

hazardous conditions that caused physical injury, medical complications, and severe psychological

trauma.  The transport between the two facilities, which are less than 5 hours' driving distance

apart, took more than 24 hours and involved several stops and vehicle changes.  The women were

deprived of adequate food and water.  One of the women, in particular, was denied access to

critical diabetes medication.  The women wore shackles throughout the lengthy journey, and the

shackles were not even removed during transfers between vehicles.  This resulted in one woman

injuring her ankle as she stepped off one of the vehicles; the transporting officers ignored her

requests for help, and her injury was not addressed by a doctor.  During one leg of the journey, the

women were shut into the back of a dark, windowless, and airless van that was so hot that some of

the women vomited and fainted.  The driver ignored their cries of distress and was texting while

driving, twice veering off the road.  All of the women reported feeling as though they were

suffocating and believing that they were going to die.  As a result of this episode, the women

experienced—and continue to experience—anxiety, fear, and difficulty sleeping in the dark.

       17.     The federal government's retention of private contractors involved in the

transportation of immigration detainees and other detained populations—and the subsequent

conduct of those contractors—are also issues of significant public interest.  Recent news stories

emphasize widespread failures of private contractors to ensure detainees' physical safety.[9]  This,

in turn, casts doubt on the adequacy of the government's oversight of these private contractors.

Many stories also emphasize the role profit motive plays in the conduct of private contractors,

who are often hired by government agencies to save money.  For example, an April 2018 article

detailed one transportee's harrowing 18-day journey through the southeastern United States caged

in the back of a transport van.[10]  During what should have been a 20-hour drive, the man was

---

[9] *See infra* Exhibit 3, at 6.

[10] Tracy Jan, "Privately run prisoner transport company kept detainee shackled for 18 days in human waste, lawsuit alleges," Washington Post (Apr. 24, 2018), https://www.washingtonpost.com/news/wonk/wp/2018/04/24/privately-run-prisoner-transport-company-kept-detainee-shackled-for-18-days-in-human-waste-lawsuit-alleges/?noredirect=on&utm_term=.38b6b43d830a.

FOIA COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   denied necessary medical attention; deprived of adequate food, water, and sleep; and packed into a

2   sweltering metal cargo van with as many as 14 other people for days on end.  Throughout the

3   journey, the transportees were forced to sit in their own waste and filth, as drivers did not stop to

4   provide bathroom breaks or clean up messes.  The article and a related lawsuit[11] allege that abuse

5   and neglect suffered by transportees is a direct result of private contractors skirting their

6   obligations to those in their custody in order to maximize profit.[12]  While the Justice Department is

7   already investigating abuse allegations against the transportation provider from this case, other

8   private contractors have escaped meaningful scrutiny.

9          18.     In particular, a great deal of controversy surrounds private contractor G4S, which

10  was under contract to transport the group of women described in paragraph 16.  G4S is the world's

11  largest private military and security company.[13]  It has been repeatedly accused of creating

12  hazardous conditions for the populations it is charged with protecting and for failing to address

13  acts of misconduct and brutality committed by its employees.  For instance, in addition to the

14  incidents referenced above in paragraphs 3–5, undercover footage from the UK showed G4S

15  officers "mocking, abusing, and assaulting" people at an immigration and asylum center following

16  reports of "widespread self-harm," "drug use," and "attempted suicide" there.[14]  The facilities

17  were found to be unsanitary and "fundamentally unsafe," and failed asylum seekers were roomed

18  with dangerous foreign national criminals who could not be safely housed at less secure

19  facilities.[15]  G4S is also infamous for its handling of a contract to provide security for the 2012

20  Olympics in London, in which it fell short on its commitment by thousands of personnel, and

21

22  [11] While the detainee involved in the 18-day journey was a U.S. citizen wanted on criminal charges, immigration detainees are often more vulnerable to abuse and bereft of legal remedies due to language and resource barriers.

23  [12] *Id.*; Complaint, *Kovari v. Brevard Extraditions, LLC*, No. 5:18-cv-00070, D.I. 1 (W.D. Va.,
24  Apr. 24, 2018).

25  [13] *See* William Langewiesche, *The Chaos Company*, Vanity Fair (Apr. 2014), https://www.vanityfair.com/news/business/2014/04/g4s-global-security-company.

26  [14] *See* Neal Baker, *Migrant 'Abuse:' G4S Suspends Nine Workers at Brook House Immigration Centre*, The Sun (Sept. 1, 2017, 8:08AM), https://www.thesun.co.uk/news/4368715/g4s-suspends-
27  immigration-staff-brook-house-abuse/; *Detainees 'mocked and abused' at immigration centre*, BBC News (Sept. 1, 2017), https://www.bbc.com/news/uk-41121692.

28  [15] *Id.*

6

FOIA COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   whistleblowers made reports of hired guards that had not passed vetting or been trained.[16]

2       19.     In addition to its contracts with ICE and U.S. Customs and Border Protection, G4S

3   has been a provider for "90 percent of U.S. nuclear facilities," where guards have repeatedly been

4   found sleeping on the job;[17] operated 27 for-profit juvenile detention facilities in the U.S., where

5   investigations have revealed physical, verbal, and sexual abuse against minors by G4S

6   employees;[18] and held hundreds of millions of dollars' worth of private prison and security

7   contracts with state and local governments.[19]

8       20.     ICE has published Performance-Based National Detention Standards ("PBNDS")

9   that outline how immigration detainee transportation and transfers should occur, covering issues

10  such as shackling during transport; access to meals, water, and medication during transport; and

11  proper inspection and maintenance of vehicles used to transport individuals.  There is little

12  information regarding how diligently private contractors operating detention facilities have

13  complied with the PBNDS; whether companies contracted to provide transportation services, such

14  as G4S, are required to comply with the PBNDS (or any other similar standard) at all; or whether

15  ICE monitors such compliance.

16      21.     The information sought in Plaintiffs' FOIA requests would reveal ICE's procedures

17  for retaining and overseeing private transportation contractors, the standards governing private

18  contractors in their transportation of immigration detainees, and whether private contractors

19  actually comply with such standards when transporting immigration detainees.  The public debate

20  regarding the treatment of immigration detainees and the role of for-profit contractors in the

21  immigration detention pipeline remains active; more information is needed to further this debate,

22

23  [16] *See* Robert Booth & Nick Hopkins, *Olympic security chaos: depth of G4S security crisis revealed*, The Guardian (July 13, 2012), https://www.theguardian.com/sport/2012/jul/12/london-2012-g4s-security-crisis.

24

25  [17] Eric Schlosser, *The Security Firm That Employed the Orlando Shooter Protects American Nuclear Facilities*, New Yorker (June 27, 2016), https://www.newyorker.com/news/news-desk/the-security-firm-that-employed-the-orlando-shooter-protects-american-nuclear-facilities.

26  [18] *See Youth Detention: US*, G4S Facts, http://g4sfacts.org/youth-detention-us/.

27  [19] *See, e.g.*, *id.*; Galbraith & Armstrong, *supra* note 6; Alex Reed-Brown, *Private Prisons and Immigrant Detention*, Sustainalytics, at 4 (Mar. 2014), http://afrikanblackcoalition.org/wp-content/uploads/2015/11/Sustainalytics-briefing.pdf.

28

7

FOIA COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  particularly as the federal government seeks to expand the scope of its immigration detention

2  program and its use of private contractors.

3  **ICE Has Failed to Produce Any Records in
Response to the First FOIA Request**

4

5       22.      On December 18, 2017, ACLU-NC submitted the First FOIA request to ICE

6  seeking the contract awarded to G4S and any other private contractors for the transportation of

7  individuals within the ICE San Francisco Area of Responsibility ("AOR"), which extends from

8  the Bakersfield area north to the Oregon border and includes 49 counties.  A copy of the First

9  FOIA Request is attached as Exhibit 1.

10      23.      ICE acknowledged receipt of the First FOIA Request by letter dated January 3,

11 2018 and assigned it reference number 2018-ICFO-13572.  ICE determined that it would not be

12 able to complete processing of the First FOIA Request within the typical 20 working day period

13 due to "the increasing number of FOIA requests received by this office" and because "[the]

14 request seeks numerous documents that will necessitate a thorough and wide-ranging search."  As

15 a result, ICE invoked a 10-day extension for processing the First FOIA Request.  A copy of this

16 letter is attached as Exhibit 2.

17      24.      As of the date of the filing of this Complaint, ACLU-NC has not received a

18 determination from ICE as to whether ICE will comply with the First FOIA Request.  ACLU-NC

19 has not received any further information about the status of the First FOIA Request despite ICE

20 having exceeded the 30-day deadline it invoked.

21      25.      As of the date of the filing of this Complaint, ACLU-NC has not received any

22 documents from ICE that are responsive to the First FOIA Request or any correspondence

23 indicating when ICE might provide any documents.

24      26.      Under 5 U.S.C. § 552(a)(6)(C)(i), ICE has constructively denied the First FOIA

25 Request by failing to produce the requested records within 30 working days.

26 **ICE Has Failed to Produce Any Records in
Response to the Second FOIA Request**

27

28      27.      On April 6, 2018, ACLU-NC and EBE submitted the Second FOIA Request to ICE

8

FOIA COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   seeking information about the transportation of individuals within the ICE San Francisco AOR

2   and about records related to contracts between ICE and G4S.  In particular, the Second FOIA

3   Request seeks records regarding the policies, procedures, and guidelines for detaining and

4   transporting immigration detainees in the state of California; recent complaints about the

5   transportation of immigration detainees; records related to the retention of private transportation

6   providers; and records related to the vehicles, officers, and other individuals involved in the

7   transportation process.  A copy of the Second FOIA Request is attached as Exhibit 3.

8          28.      USPS tracking indicates that the Second FOIA Request was delivered to the ICE

9   FOIA Office in Washington, D.C. on April 12, 2018.

10         29.      On April 25, 2018, ICE provided an electronic acknowledgment of receipt of the

11  Second FOIA Request and assigned it reference number 2018-ICFO-31309.  The acknowledgment

12  asserted that the Second FOIA Request had been sent on April 13, 2018 and received by the ICE

13  Freedom of Information Act Office ("FOIA Office") on April 25, 2018.  ICE determined that it

14  would not be able to complete processing of the request within the typical 20 working day period

15  due to "the increasing number of FOIA requests received by this office" and because "[the]

16  request seeks numerous documents that will necessitate a thorough and wide-ranging search."  As

17  a result, ICE invoked a 10-day extension for processing the Request.  A copy of this

18  acknowledgment is attached as Exhibit 4.

19         30.      As of the date of the filing of this Complaint, Plaintiff has not received a

20  determination from ICE as to whether ICE will comply with the Plaintiff's Second FOIA Request.

21  The acknowledgment states that the FOIA Office has "queried the appropriate program offices

22  within ICE for responsive records" and that queried records "will be reviewed for determination of

23  reliability" after they are located.  Nevertheless, Plaintiff has not received any further information

24  about the status of the Second FOIA Request despite ICE having exceeded its 30-day deadline.

25         31.      As of the date of the filing of this Complaint, Plaintiff has not received any

26  documents from ICE that are responsive to the Second FOIA Request or any correspondence

27  indicating when ICE might provide any documents.

28         32.      Under 5 U.S.C. § 552(a)(6)(C)(i), ICE has constructively denied the Second FOIA

9

FOIA COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  Request by failing to produce the requested records within 30 working days.

2  ## FIRST CLAIM FOR RELIEF

3  ### Violation of the Freedom of Information Act for
4  ### Wrongful Withholding of Agency Records

5        33.     Plaintiff incorporates by reference the above paragraphs as if fully set forth herein.

6        34.     The FOIA Requests are legitimate requests for records relating to matters of great

7  public concern.  Defendant ICE has wrongfully withheld agency records requested by Plaintiff

8  under FOIA in the FOIA Requests.

9        35.     Plaintiff has exhausted the applicable administrative remedies with respect to ICE's

10  wrongful withholding of the requested records.

11        36.     Plaintiff has suffered irreparable injury from, and will continue to suffer irreparable

12  injury from, ICE's illegal withholding of government documents pertaining to the subject of

13  Plaintiff's FOIA Requests.

14        37.     Plaintiff is entitled to declaratory relief because an actual controversy exists

15  regarding ICE's failure to meet its obligations under FOIA.

16        38.     Plaintiff has no adequate remedy at law other than injunctive and declaratory relief.

17        39.     Accordingly, Plaintiff has a right under FOIA to injunctive and declaratory relief

18  against ICE for its unlawful withholding of the requested records.  5 U.S.C. § 552(a)(4)(B); *see*

19  *also, e.g.*, *Oregon Natural Desert Ass'n v. Locke*, 572 F.3d 610, 612–14 (9th Cir. 2009).

20  ## PRAYER FOR RELIEF

21       WHEREFORE, Plaintiff prays that this Court:

22       A.     Order Defendant ICE to promptly process and release all responsive records to the

23  FOIA Requests, including, but not limited to, the contracts with G4S and other private contractors

24  for the transport of detainees in the San Francisco AOR; the policies, procedures, and guidelines

25  for detaining and transporting immigration detainees in the state of California; recent complaints

26  about the transportation of immigration detainees; records related to the retention of private

27  transportation providers; and records related to the vehicles, officers, and other individuals

28  involved in the transportation process, as described more fully in Exhibits 1 and 3;

FOIA COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1      B.      Declare that Defendant ICE's failure to disclose the records requested by Plaintiff

2  is unlawful;

3      C.      Award Plaintiff its litigation costs and reasonable attorneys' fees incurred in this

4  action, as provided in 5 U.S.C. § 552(a)(4)(E) or any other law; and

5      D.      Grant such other relief as the Court may deem just and proper.

6

7  Dated: July 10, 2018                                Respectfully submitted,

8

9                                              By: /s/ *Neel Chatterjee*
                                                   Neel Chatterjee
                                                   Andrew Ong
10                                                 Ian Chen
                                                   Hong-An Vu
11                                                 Hayes Hyde
                                                   Andrea Scripa Els (*pro hac vice* forthcoming)
12                                                 **GOODWIN PROCTER LLP**

13                                                 Vasudha Talla
                                                   Julia Harumi Mass
14                                                 **AMERICAN CIVIL LIBERTIES UNION**
                                                   **FOUNDATION OF NORTHERN**
15                                                 **CALIFORNIA**

16                                                 *Attorneys for Plaintiff*

17

18

19

20

21

22

23

24

25

26

27

28

FOIA COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF